IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

THOMAS H. FLUHARTY, Trustee of the
Bankruptcy Estate of D. Kevin Coleman
and Diane M. Coleman and
D. KEVIN COLEMAN and DIANE M. COLEMAN,

     Plaintiffs,

v.                          Civil Action No. 5:13CV68
                                   (STAMP)
QUICKEN LOANS, INC., TITLE SOURCE, INC.
and M&T BANK,

     Defendants.

**MEMORANDUM OPINION AND ORDER
GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT,
GRANTING M&T BANK'S MOTIONS TO JOIN AND
DENYING DEFENDANTS' MOTION IN LIMINE AS MOOT**

I. <u>Procedural History</u>

The plaintiffs filed this civil action against defendants, Quicken Loans Inc. ("Quicken"), Title Source Inc. ("Title"), and Bank of America, N.A. ("B of A") regarding two loan refinancing transactions. In their complaint, the plaintiffs allege six claims based on the West Virginia Residential Mortgage Lender, Broker, and Servicer Act, W. Va. Code § 31-17-1, <u>et seq.</u> ("RMLBS") and the West Virginia Consumer Protection Act, W. Va. Code § 46 A-1-101, <u>et seq.</u> ("CPA"). Count I alleges that Quicken did not provide the plaintiffs with copies of the executed loan documents at closing, in violation of the RMLBS. Count II asserts that because Quicken and Title are each owned by the same parent corporation, any payment made to Title regarding the loan transactions did not

qualify as a payment to an "unrelated third party," thus violating the RMLBS. Count III alleges that actions of Quicken and Title rendered the transaction with the plaintiffs unconscionable. Count IV claims that the actions of Quicken and Title created a false impression that the fees were lawful in violation of the CPA. Count V asserts that Quicken and Title failed to disclose their business relationship, thus constituting a deceptive and unlawful practice under the CPA. Count VI alleges that B of A took whatever interest existed in the loan and deed of trust, subject to the claims of the plaintiffs. Thus, the plaintiffs seek to have the claims against Quicken bind B of A as well. The plaintiffs seek several items of relief, including punitive and compensatory damages, the cancellation of the loan, and attorney's fees and costs.

The defendants filed a motion to dismiss, and this Court granted that motion as to Counts I, II, IV, and V. ECF No. 28. Therefore, the remaining counts at this stage are Counts III and VI, which pertain to the claim of unconscionability. Later, the parties stipulated that M&T Bank ("M&T") substituted for B of A in this civil action. ECF No. 72. At issue now are the defendants' motion for summary judgment and motion in limine.

A.  <u>Motion for Summary Judgment</u>

Defendants Quicken and Title filed their motion for summary judgment, to which M&T bank filed a motion to join. ECF Nos. 106

and 108.  The defendants assert four arguments in their motion for summary judgment, noting that only the plaintiffs' unconscionability claim remains.  First, the defendants point out that the plaintiffs admit that the loan transactions are not unfair.  Therefore, the plaintiffs' unconscionability claim fails as a matter of law.  Second, the defendants argue that although they may have failed to comply with a technical requirement of the RMLBS, that violation alone does not demonstrate a procedurally unconscionable transaction.  In particular, the plaintiffs did not receive copies of the executed loan documents at closing.  Rather, the defendants provided the plaintiffs with identical and unexecuted copies of the loan documents prior to closing.  Although they may have technically violated the RMLBS, the defendants assert that such a violation does not equate to a procedurally unconscionable transaction.  Third, the defendants claim that the loan transaction was not substantively unconscionable.  The plaintiffs claim that their loan transaction was substantively unfair because they paid a settlement service fee to Title that allegedly violated the RMLBS.  Regarding that payment, however, the defendants argue that the plaintiffs were aware of not only the affiliation between Title and Quicken, but also their right to select another settlement service provider.  Thus, the defendants argue that no substantively unconscionable conduct occurred regarding the loan transaction.  Fourth, the defendants contend

that the plaintiffs are sophisticated parties.  Here, they point

out that plaintiff D. Kevin Coleman is an attorney, and that

plaintiff Diane M. Coleman obtained a bachelor's degree in

education.  Therefore, because no genuine issues of material fact

exist, the defendants request that this Court grant their motion

for summary judgment.

The plaintiffs then filed a response in opposition.  ECF No.

109.  The plaintiffs first point out that the defendants violated

the RMLBS because they failed to provide copies of the executed

loan documents at closing.  Next, regarding the fees, the

plaintiffs contend that although this Court dismissed that claim

under the RMLBS, the conduct regarding the fees is also

unconscionable under the CPA.  In particular, the plaintiffs admit

that this Court determined that the applicable statute of

limitations barred any causes of action under the RMLBS.  Despite

that, the plaintiffs assert that "the violation of a statute which

defines the public policy of the State of West Virginia is an

unconscionable act within the meaning of" the CPA.  Therefore, the

plaintiffs contend that continued and willful violations of the

RMLBS by the defendants is unconscionable and thus actionable under

the CPA.  With that in mind, the plaintiffs next argue that aside

from the defendants' procedural violations of the CPA, substantive

violations also exist.  Here, the plaintiffs point to the

settlement service fees that they paid to Title.  Further, the

plaintiffs assert that any willful violation of the RMLBS or CPA, no matter how technical, results in the voiding of a loan, among other relief.  For those reasons, the plaintiffs claim that the defendants' motion should be denied.

Defendants Quicken and Title then filed a reply, to which M&T filed a motion to join.  ECF Nos. 117 and 120, respectively.  The defendants first point out that the plaintiffs continue to assert violations of the CPA and RMLBS rather than show how they satisfy the legal standard of unconscionability.  Next, the defendants argue that the plaintiffs failed to raise any genuine issues of material fact as to the unconscionability of the loan transaction. Finally, the defendants reassert their arguments from their initial motion, which are that (1) receiving unexecuted copies of the loan documents prior to closing does not satisfy the standard for procedural unconscionability, (2) no substantively unconscionable conduct occurred, and (3) the plaintiffs are sophisticated parties.

B.  <u>Defendants' Motion in Limine</u>

The defendants filed a motion in limine, to which M&T filed a motion to join.  ECF Nos. 110 and 112, respectively.  In their motion, the defendants seek to exclude all testimony and evidence related to the loan closings of certain third party borrowers.  The defendants provide a list of third party borrowers from which the plaintiffs plan to elicit testimony and evidence.  Here, the defendants point out that claims under unconscionability are fact

specific.  The facts that matter, however, are those of the
plaintiffs rather than the facts of third parties.  Further, the
defendants believe that the plaintiffs provide insufficient
evidence to prove that the plaintiffs and those third party
borrowers are similarly situated or experienced the same
circumstances.  Finally, the defendants assert that no probative
value exists concerning the evidence of the third party borrowers.
Therefore, they request that such evidence be excluded.

The plaintiffs then filed a response in opposition.  ECF No.
113.  In that response, the plaintiffs first discuss the specific
evidence they seek to present.  In particular, the plaintiffs seek
to use the loan closing documents and testimony from those third
party borrowers about what documents were received at closing.  The
plaintiffs indicate that the third party borrowers all received the
same unsigned loan documents.  Based on those repeated occurrences,
the plaintiffs argue that those documents and the related evidence
should be admitted under Rule 406 of the Federal Rules of Evidence
because they establish a routine practice of the defendants.
Second, the plaintiffs believe that such evidence is relevant for
proving their unconscionability claim.  For those reasons, the
plaintiffs request that this Court deny the defendants' motion in
limine.

For the reasons set forth below, the defendants' motion for
summary judgment must be granted, as well as M&T's motions to join.

Accordingly, the defendants' motion in limine and M&T's motion to join that motion in limine are denied as moot.

## II. <u>Facts</u>

The claims in this civil action pertain to two loan transactions among the plaintiffs, one of whom is an attorney, Quicken, and Title. The transactions occurred in 2008 and 2009 involving the plaintiffs' refinancing of their loan. ECF No. 106 Exs. 1 and 4, respectively. As a result of those refinancing transactions, the plaintiffs ultimately executed a note in favor of Quicken, worth approximately $215,000.00. At the closing of those refinancing transactions, Quicken did not provide the plaintiffs with copies of the executed documents. Quicken did, however, provided the plaintiffs with two then unexecuted copies of the loan documents prior to the closing of each refinancing transaction. ECF No. 106 Exs. 3 and 7. The plaintiffs admit that as to each refinancing transaction, their terms and closing costs were not unfair. ECF Nos. 106 Exs. 3 *45, 47 and 57, 6 *26. Further, the plaintiffs reviewed the documents that they would sign at closing. ECF No. 106 Exs. 3 *60 and 6 *17.

In addition to receiving two copies of the loan documents, the plaintiffs also received an "Affiliated Business Arrangement Disclosure." ECF No. 106 Ex. 9. That disclosure notified the plaintiffs that Title and Quicken maintained a business relationship. In particular, that disclosure stated that Title

performs "title insurance, title search, settlement, and appraisal management services" for Quicken.  <u>Id.</u>  In addition to disclosing that relationship and those services, the disclosure also set forth the settlement services and charges that the plaintiffs would incur if they chose to use Title as a settlement service provider.  <u>Id.</u> More importantly, the disclosure stated the following in all capital letters:

> There are frequently other settlement service providers available with similar services.  You [the plaintiffs] are free to shop around and determine that you are receiving the best services and the best rate for these services (with exception of appraisal services).

<u>Id.</u> at 2.  The plaintiffs received the disclosure prior to closing. Moreover, they were notified of the right "to shop around," and did not choose to do so.  ECF No. 106 Exs. 3 *115 and 6 *29-30.  The fees that Title did receive for its settlement services were charged for work actually performed regarding the loan closing. ECF No. 106 Ex. 7.  The plaintiffs did not raise questions or concerns regarding those fees.  ECF No. 106 Ex. 3 *109 and Ex. 6 *30.

### III.  <u>Applicable Law</u>

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).

However, as the Supreme Court of the United States noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial ." Anderson, 477 U.S. at 256. "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id. at 250; see also Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979) (Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In <u>Celotex</u>, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." <u>Celotex</u>, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. <u>See</u> <u>Oksanen v. Page Mem'l Hosp.</u>, 912 F.2d 73, 78 (4th Cir. 1990), <u>cert. denied</u>, 502 U.S. 1074, 112 S. Ct. 973, 117 L.Ed.2d 137 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

## IV. <u>Discussion</u>

As provided earlier, at issue are the defendants' motion for summary judgment and motion in limine. Those motions are discussed below in the order presented.

## A. <u>Motion for Summary Judgment</u>

As the defendants correctly point out, the remaining claims in this civil action are Counts III and VI. Regarding Count III, the plaintiffs alleged that Quicken and Title violated the RMLBS, thereby rendering the refinancing transactions unconscionable. ECF No. 1. Concerning Count VI, that count asserts that B of A, which

has since been substituted by M&T, maintained a sufficient interest in the loan so as to bind any judgment against Quicken and Title to M&T. In their motion for summary judgment, the defendants argue that the refinancing transactions are neither procedurally nor substantively unconscionable. The plaintiffs contend that the defendants arguments are misguided, pointing to (1) the defendants' violation of the RMLBS by failing to provide copies of the executed documents at the closing, and (2) the payment of settlement service fees to Title. As discussed below, however, the plaintiffs' arguments and the record provided do not satisfy the applicable legal standard.

West Virginia law provides that "[t]he doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written." Brown v. Genesis Healthcare Corp. ("Brown II"), 729 S.E.2d 217, 226 (W. Va. 2012). Analyzing a claim under that doctrine requires an "inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole." Syl. Pt. 3, Troy Min. Corp. v. Itmann Coal Co., 346 S.E.2d 749 (W. Va. 1986). When assessing a claim of unconscionability, a court "must focus on the relative positions of the parties, the adequacy of the bargaining positions, the meaningful alternatives available to the plaintiff, and the existence of unfair terms in the contract."

Syl. Pt. 4, <u>Art's Flower Shop, Inc. v. Chesapeake and Potomac</u> <u>Telephone Co. of West Virginia, Inc.</u>, 413 S.E.2d 670 (W. Va. 1991) (internal quotations omitted).

More specifically, however, West Virginia law separates a claim of unconscionability into two components: procedural and substantive. <u>Brown II</u>, 729 S.E.2d at 227 (internal citations omitted). A contract term becomes unenforceable if both procedural and substantive unconscionability exist. <u>Id.</u> In assessing whether those two components have been proven, courts "apply a 'sliding scale' in making this determination: the more substantively oppressive a contract term, the less evidence of procedural unconscionability is required" to prove that claim. <u>Id.</u> (internal citations and quotations omitted). Those two components are separately analyzed below.

1. <u>Procedural Unconscionability</u>

Procedural unconscionability refers to any "inequities, improprieties, or unfairness in the bargaining process and formation of the contract." <u>Brown II</u>, 729 S.E.2d at 227; <u>see</u> <u>Pingley v. Perfection Plus Turbo-Dry, L.L.C.</u>, 746 S.E.2d 544, 551 (W. Va. 2013). It requires an examination of certain inadequacies that, when viewed together, "result in a lack of a real and voluntary meeting of the minds of the parties." <u>Pingley</u>, 746 S.E.2d at 551 (quoting Syl. Pt. 17, <u>Brown v. Genesis Healthcare</u> <u>Corp. ("Brown I")</u>, 724 S.E.2d 250 (W. Va. 2011)). Those certain

inadequacies include "the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract." Pingley, 746 S.E.2d at 551 (quoting Brown I, 724 S.E.2d at syl. pt. 17).

After analyzing the record, it is clear that no procedural unconscionability exists as to the refinancing transactions. Regarding the relative positions of the parties, no great disparity exists. Although the defendants are large corporate parties, the facts do not indicate that the plaintiffs were forced to use Quicken as their loan servicer, or to use Title as their settlement services provider. Rather, the plaintiffs received notice that they had a right to select a different settlement service provider, as seen in the Affiliated Business Disclosure. ECF No. 106 Ex. 9. As to the sophistication of the parties, that does not appear to be a serious concern. Plaintiff D. Kevin Coleman is an attorney specializing in medical malpractice defense. ECF No. 106 Ex. 3. Plaintiff Diane M. Coleman has a bachelor's degree and participated in classes towards a master's degree. Id. at Ex. 6. Further, Mr. Coleman indicated a familiarity with the loan closing process. Id. at Ex. 3 *27. The point is that the record shows that the plaintiffs are not unsophisticated with respect to the refinancing transactions.

As to the complexity and length of the documents, although the loan documents could be considered lengthy, the plaintiffs reviewed the documents that they would sign at closing. ECF No. 106 Ex. 6 *17. Even more telling than that are the plaintiffs' admissions that as to each refinancing transaction between them and Quicken, their terms and costs were not unfair. ECF No. 106 Exs. 3 *45 and 47, 6 *26. Regarding the settlement services provided by Title, the plaintiffs received a disclosure that not only disclosed the relationship between Quicken and Title, but also notified them of their right to seek a different provider. That right "to shop around" was printed in large capital letters, and the plaintiffs received that disclosure before closing. The plaintiffs neither raised objections to the fees that Title charged nor attempted to seek a different settlement service provider. See ECF No. 106 Exs. 3 and 6. In further support of their argument, the defendants' expert witness stated that the settlement service provider fees that Title charged "are within industry standards," and that "nothing unfair" exists "about [those] fees, which were charged by [Title] for actual work performed in connection with the closing." ECF No. 106 Ex. 8. Further, the plaintiffs stipulated that no out-of-pocket damages, pain and suffering damages, or specific losses on fees occurred. ECF No. 106 Ex. 3 *56. Under the above facts, the record simply does not show that the refinancing transactions contained inadequacies such that a "lack of real and voluntary

meeting of the minds of the parties" exists. <u>Pingley</u>, 746 S.E.2d at 551 (internal quotations and citations omitted).

The plaintiffs contend that the loan transactions were procedurally unconscionable because the defendants violated the RMLBS. Under West Virginia Code § 31-17-8(j)(6), it states that "No instrument evidencing or securing a primary or subordinate mortgage loan shall contain . . . [b]lank or blanks to be filled in after the consummation of the loan. A borrower must be given a copy of every signed document executed by the borrower at the time of closing." The plaintiffs originally asserted a violation of that above provision in Count I of the complaint. This Court dismissed that claim under the applicable statute of limitations. ECF No. 28. Notwithstanding the dismissal of that claim, the plaintiffs appear to argue that failing to comply with the terms of that statute, or violating a statute that defines the public policy of the State of West Virginia, is an unconscionable act. As the defendants point out, however, that is not the standard for satisfying a claim of unconscionability. Rather, the conduct of the defendants must be analyzed under the applicable standard provided under West Virginia law. Further, the plaintiffs provide no additional evidence to refute that finding, or to at least raise genuine issues of material fact. Because of that, the defendants' motion must be granted.

2.  Substantive Unconscionability

Notwithstanding the lack of procedural unconscionability, this Court will address the second component for a claim of unconscionability.  Substantive unconscionability relates to the "unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party." Pingley, 746 S.E.2d at 551 (quoting Brown I, 724 S.E.2d at syl. pt. 19).  When assessing substantive unconscionability, the factors that a Court must analyze "vary with the content of the agreement."  Pingley, 746 S.E.2d at 551 (internal citations omitted).  Therefore, courts should "assess whether a contract provision is substantively unconscionable on a case-by-case basis." Brown I, 724 S.E.2d at 262.  Nonetheless, relevant factors to consider include "the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns." Pingley, 746 S.E.2d at 551; see also Dan Ryan Builders, Inc. v. Nelson, 737 S.E.2d 550 (W. Va. 2012); Johnson Controls, Inc. v. Tucker, 729 S.E.2d 808 (W. Va. 2012).

Applying the above legal standard, the plaintiffs have not sufficiently demonstrated that the transactions were substantively unconscionable.  Regarding commercial reasonableness, the facts do not show any commercially unreasonable terms.  The plaintiffs received a loan from Quicken.  In exchange, the plaintiffs would

16

pay the principal sum plus interest to Quicken.  ECF No. 106 Ex. 1.
As indicated earlier, the plaintiffs admitted that the loan terms
were not unfair.   The circumstances show that sophisticated
parties, here the plaintiffs, entered into two refinancing
agreements for their loan.  The facts regarding those transactions
display nothing unfair about the transaction and fail to raise
concerns as to commercial unreasonableness or a public policy
violation.  Further, nothing about such an exchange and agreement
demonstrates an unfair allocation of risk as to either party.
Although the plaintiffs may not have received copies of the
executed loan documents at signing, that alleged violation of the
RMLBS does not by itself satisfy the above legal standard.   The
record shows that the plaintiffs received, prior to the closing
date, unexecuted copies of the documents that were identical to
what would be signed at closing.   They also reviewed those
documents and raised no concerns.  Therefore, as to the refinancing
transactions between the plaintiffs and Quicken, the record does
not show that the refinancing agreements' terms were substantively
unconscionable.

As to the use of Title for settlement services, this Court
also finds for the defendants.  In their complaint, the plaintiffs
alleged that the fee arrangement between Title and Quicken violated
the RMLBS.  In particular, West Virginia Code § 31-17-8(g) states
the following:

> Except for fees for services provided by unrelated third parties for appraisals, inspections, title searches and credit reports, no application fee may be allowed whether or not the mortgage loan is consummated; however, the borrower may be required to reimburse the licensee for actual expenses incurred by the licensee in a purchase money transaction after acceptance and approval of a mortgage loan proposal made in accordance with the provisions of this article which is not consummated because of (1) The borrower's willful failure to close the loan; or (2) The borrower's false or fraudulent representation of a material fact which prevents closing of the loan as proposed.

Because the plaintiffs paid a fee to Title, which maintains an affiliation with Quicken, the plaintiffs believe that the defendants violated the above provision of the RMLBS. That situation allegedly demonstrates substantive unconscionability. The plaintiffs' argument, however, is without merit.

The standard for whether terms of a contract are substantively unconscionable is not proven simply by alleged violations of a statute. Rather, the plaintiffs need to demonstrate that the fee arrangement between the plaintiffs and Title is overly "one-sided" or unfair, as provided above. The plaintiffs do not satisfy that standard. As indicated earlier, the plaintiffs received a disclosure from the defendants, stating that Title and Quicken maintained a business relationship. In particular, that disclosure described the services that Title performs. The disclosure also provided the costs that the plaintiffs would incur if they chose to use Title as a settlement service provider. <u>Id.</u> As stated

earlier, however, the disclosure stated the following in all capital letters:

> There are frequently other settlement service providers available with similar services. You [the plaintiffs] are free to shop around and determine that you are receiving the best services and the best rate for these services (with exception of appraisal services).

Id. at 2. The plaintiffs received the disclosure prior to closing. They were notified of the right "to shop around," and did not choose to do so. ECF No. 106 Exs. 3 *115 and 6 *29-30. With those facts in mind, this Court fails to see how the transactions and their terms were unconscionable. Mrs. Coleman, when asked about whether the closing documents appeared unfair in any way, even stated that "[n]othing jumped out at me." ECF No. 106 Ex. 6 *20. Further, the plaintiffs received sufficient information of not only the relationship between Quicken and Title, but also of their right to seek settlement services from a different provider. As stated earlier, the defendants' expert witness stated that the settlement service provider fees that Title charged "are within industry standards," and that "nothing unfair" exists "about [those] fees, which were charged by [Title] for actual work performed in connection with the closing." ECF No. 106 Ex. 8. This Court finds insufficient evidence in the refinancing terms and record that demonstrates a level of unfairness that satisfies the substantive unconscionability standard. Further, the plaintiffs provide no additional evidence to refute that finding, or to at least raise

genuine issues of material fact. Because of that, the defendants'
motion must be granted.

B.   Motion in Limine

As discussed earlier, the defendants filed a motion in limine
relating to evidence of third party borrowers, which M&T filed a
motion to join in.  ECF Nos. 110 and 112.  This Court, however, has
granted the defendants' motion for summary judgment.  Therefore, it
is unnecessary for this Court to discuss the merits of the
defendants' motion in limine.  Thus, the defendants' motion in
limine, as well as M&T's motion to join, are denied as moot.

V.   Conclusion

For the reasons set forth above, motion for summary judgment
of Quicken Loans, Inc. and Title Source, Inc. (ECF No. 106), as
well as M&T Bank's related motions to join (ECF Nos. 108 and 120)
are GRANTED.  The motion in limine of Quicken Loans, Inc. and Title
Source, Inc. (ECF No. 110) and M&T Bank's motion to join their
motion in limine (ECF No. 112) are both DENIED AS MOOT.  It is
further ORDERED that this civil action be DISMISSED and STRICKEN
from the active docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum
opinion and order to counsel of record herein.  Pursuant to Federal
Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment
on this matter.

DATED:      April 6, 2015


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE